Not for Publication (Docket Entry No. 5)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| EAST COAST TRANSPORT & LOGISTICS, LLC, | : | |
| Plaintiff, | : | Civil No. 07-4568 (RBK) |
| v. | : | **OPINION** |
| ALFAMODESS LOGISTICS, LLC; PHILIP KURI; and STEVEN NAREWSKI, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motions of Defendants Alfamodess Logistics, LLC, Philip Kuri, and Steven Narewski[1] ("Defendants") to dismiss the complaint of Plaintiff East Coast Transport and Logistics, LLC for lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, and failure to comply with N.J.S.A. § 42:2B-57. For the reasons that follow, the Court concludes that it does not have personal jurisdiction over the Defendants and orders this case transferred to the Eastern District of Pennsylvania.

**I.    BACKGROUND**

The Court reviews the facts as alleged in the Complaint. Plaintiff East Coast Transport &

---

[1] Defendant Narewski's name was incorrectly pled as Narowski.

1

Logistics is a limited liability company, incorporated in Arkansas and wholly owned by Allen Freight Services, which is incorporated in Missouri. East Coast's principal place of business is in the T/A Truck Stop in Paulsboro, New Jersey. East Coast is a broker of freight and is licensed by the Federal Motor Carrier Safety Administration ("FMCSA") to make arrangements between shipper-customers and motor carriers authorized to transport freight. Plaintiff refers to its operations as "marrying a shipper with a motor carrier." (Compl. ¶ 9.) Cardinal Heath, Inc. was one of the shippers doing business through East Coast, and Defendant Nareski was Cardinal's "traffic manager." Burlington Motor XPress ("BMX") was one of East Coast's motor carriers, and East Coast would arrange for BMX, among other motor carriers, to transport Cardinal's freight. At some point during the business dealings of the parties, Defendant Alfamodess began auditing Cardinal's invoices and documentation relating to freight transportation. Defendant Philip Kuri was Alfamodess's logistics manager.

East Coast alleges that it has spent large amounts of time and energy developing a list of truckers. There are approximately 700 truckers on this list, and they are included based on such factors as reliability of service, availability of equipment, loss or damage claims experience, sufficiency of insurance, charge-back rates, rate structure, familiarity with Plaintiff's shippers, expected pay periods, and ability to meet Plaintiff's shippers' specific needs. East Coast has also spent time and energy developing various rate structures to calculate the rates to be charged to shippers for each shipment. Each time freight was transported, East Coast produced an invoice for the shipper for payment; this invoice did not include the name of the trucker or the rate charged to the trucker. Defendants Kuri and Alfamodess viewed these invoices as part of their audit.

2

East Coast accuses Defendant Narewski of providing Alfamodess and Kuri with the identity of the truckers used by Cardinal to transport freight, including but not limited to BMX. East Coast surmises that this information must have come from Narewski, as it could not be learned from the available invoices. Once learning the identity of BMX, Alfamodess approached BMX and offered to pay them more than East Coast would to transport Cardinal freight. As a result, the number of Cardinal shipments arranged through East Coast decreased from approximately 40 per month to zero. East Coast alleges that the Defendants' actions constituted unfair competition and improper use of confidential trade secrets. On July 23, 2007, East Coast filed a Complaint in the Superior Court of New Jersey, Law Division-Gloucester County, claiming that Defendants committed various intentional torts and violated the New Jersey RICO statute at N.J.S.A. ¶ 2C:41-4. Defendants removed the case to this Court on September 24, 2007, and they filed the motion to dismiss now before the Court on October 16, 2007.

One other note about the procedure of this case is warranted. According to East Coast's counsel, after Defendants' motion to dismiss had been filed, East Coast received instructions from its parent company to terminate all litigation because of an anticipated recession in the transportation industry. A signed stipulation of dismissal was sent to Defendants on October 23, 2007. However, Defendants would not consent to the dismissal. East Coast now opposes the motion to dismiss.

## II.     PERSONAL JURISDICTION

### A.     Standard

Plaintiffs allege that the Defendants' actions give rise to the fair exercise of jurisdiction. Defendants contend that they have not purposefully directed any business activities towards New

Jersey, and there is no basis for either specific or general jurisdiction. Once a defendant raises the defense of lack of personal jurisdiction, the burden shifts to the plaintiff to prove by a preponderance of evidence facts sufficient to establish personal jurisdiction. Carteret Savs. Bank F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Pennsylvania, where the defendants reside, and New Jersey, where the Complaint was filed, are geographically close, but the issue is not one of convenience. To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction. Second, the court must apply the principles of due process. Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, and so New Jersey courts look to federal law for the interpretation of the limits on personal jurisdiction. Id.

Personal jurisdiction under the Due Process Clause depends on the "relationship among the defendant, the forum, and the litigation." Imo Indus., 155 F.3d at 259. Physical presence within the forum is not required; instead, the plaintiff must show that the defendant purposefully directed his activities toward the residents of the forum state, or otherwise "purposefully availed [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Personal jurisdiction can be either in the form of "specific jurisdiction" or "general jurisdiction." If the plaintiff's cause of action relates to or arises out of the defendant's contacts

4

with the forum, the court is said to exercise "specific jurisdiction." Id. If the plaintiff's claim does not arise out of the defendant's contacts with the forum, the court is said to exercise "general jurisdiction"; under general jurisdiction, the contacts must be shown to be "continuous and systematic." Id. at 259 n.2.

### B.     Alleged Contacts

Although the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction, the Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret, 954 F.2d at 142 n.1; Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). Where East Coast has neither provided information about a particular type of contact nor disputed Defendants' contentions regarding their contacts with New Jersey, the Court will evaluate Defendants' contentions as well.

Defendants Kuri and Narewski are residents of Pennsylvania. (Kuri Decl. ¶ 2; Narewski Decl. ¶ 2.) The sole member of Defendant Alfamodess is Mark Odessa, also a resident of Pennsylvania. (Odessa Decl. ¶¶ 4.) Alfamodess has an office only in Pennsylvania and does not maintain an office in New Jersey. (Odessa Decl. ¶ 2, 9.) Neither Kuri, Narewski, nor Alfamodess or its agents maintain real estate, personal property, or bank accounts in New Jersey, and all have drivers' licenses and pay taxes in Pennsylvania. (Kuri Decl. ¶¶ 3-6; Narewski Decl. ¶¶ 3-6; Odessa Decl. ¶¶ 5-8.) According to Odessa, Alfamodess does not provide services to any customers located in New Jersey, and though it brokers loads that may originate, pass through, or terminate in New Jersey, these origination points, routes, and termination points are determined by the customers and not Alfamodess. (Odessa Decl. ¶¶ 20-22.)

East Coast does not dispute these facts. Rather, East Coast asserts in the Complaint and

through the Declarations of Daniel Latta, the president of East Coast, and Michael Aglidian, the general manager of BMX, that Defendants have other contacts with New Jersey permitting the exercise of jurisdiction.  East Coast initially "secured business" from Cardinal after a meeting with Narewski in December 2005, thought it is not clear where this meeting took place or whether a contract was formed.  (Latta Decl. ¶ 13.)  East Coast contends that a representative from Alfamodess identifying himself as a "broker from Hatboro" contacted BMX in New Jersey in late February or early March 2007 and promised to pay more than East Coast was paying to transport Cardinal freight.  This contact appears to have been over the phone.  (Aglidian Decl. ¶ 2.)  BMX asked for credit references, and Alfamodess instead wired money to BMX's account to pay for the Cardinal loads.  BMX hauled seven loads (four from Philadelphia to New Jersey, and one from New Jersey to Philadelphia) and sent proof of delivery documents from New Jersey to Pennsylvania.  (Aglidian Decl. ¶ 7.)  Alfamodess overpaid BMX but told BMX to keep the difference and apply it towards future loads.  (Aglidian Decl. ¶ 8.)  BMX reported all this information to East Coast and performed no other work for Alfamodess.  (Latta Decl. ¶ 28.)

      East Coast alleges that Alfamodess now transports freight for Cardinal to New Jersey destinations because East Coast did so when it brokered Cardinal loads.  (Latta Decl. ¶ 45.)  Additionally, East Coast alleges that there was communication via email between East Coast and Alfamodess during the period when Alfamodess was auditing Cardinal's transportation billing.  (Latta Decl. ¶ 18.)  Alfamodess, through Kuri, would wire money to East Coast's parent company to pay Cardinal's freight bills, and Defendant Kuri would mail East Coast a summary of what invoices were paid for each wire transfer.  (Latta Decl. ¶ 19.)

6

### C. General Jurisdiction

Courts may exercise general personal jurisdiction when a defendant's contacts with the forum arise from activities outside the scope of the instant action. The Court can exercise general jurisdiction over a defendant only if the defendant is found to have "continuous and systematic contacts with the forum state." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). This inquiry has been characterized as requiring the plaintiff to "show significantly more than minimum contacts." Provident Nat'l Bank v. Cal. Fed. Savs. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987).

All of Defendants' contacts with New Jersey, whether related to the claims or not, will be considered in evaluating East Coast's claim that this Court possesses general jurisdiction over Defendants. The Court finds that the correspondence alleged is too minimal and the contacts alleged too tangential to give rise to general jurisdiction. Neither Kuri nor Narewski live or work in New Jersey. Alfamodess does not have an office in New Jersey, and while it may broker loads beginning or terminating in New Jersey, Alfamodess is not registered to do business in New Jersey. Alfamodess did direct emails and some mailings from August 2006 through March 2007 to East Coast in New Jersey at the behest of Cardinal, and Alfamodess called and paid BMX via wire transfer in New Jersey in early 2007. The Court assumes that East Coast's allegations regarding Alfamodess brokering Cardinal's freight are true and assumes therefore that Alfamodess finds truckers to deliver Cardinal freight to New Jersey destinations. However, it is not clear whether Alfamodess has any ongoing business relationships in New Jersey requiring continuing contact with the state, and Alfamodess asserts that it does not provide services to any customers in New Jersey. (Odessa Decl. ¶ 20.) None of the Defendants have the kind of

continuous and systematic contacts required for general jurisdiction. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984). The Court concludes that it cannot exercise general jurisdiction over these Defendants.

    **D.**    **Specific Jurisdiction**

Courts apply a traditional three-part test to determine personal jurisdiction. First, the defendant's actions must have been "purposefully directed" at the forum state. <u>Burger King</u>, 471 U.S. at 472 (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984)). Second, the plaintiff's claim must "arise out of or relate to" that conduct by the defendant directed at the forum. <u>Helicopteros</u>, 466 U.S. at 414. For this reason, specific jurisdiction is determined on a claim-by-claim basis. <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001). Third, the exercise of jurisdiction must "comport with 'fair play and substantial justice.'" <u>Burger King</u>, 471 U.S. at 476 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S.310, 320 (1945). A business arrangement itself is not sufficient to give rise to personal jurisdiction in New Jersey. <u>Mellon Bank</u>, 960 F.2d at 1223. To be subject to jurisdiction in New Jersey, a defendant must have "purposefully availed" himself of the state. <u>Rodi v. Southern New England School of Law</u>, 255 F. Supp.2d 346, 349 (D.N.J. 2003). The first count of the Complaint alleges that Defendants committed misappropriation of confidential business information and trade secrets. The conduct allegedly giving rise to this harm occurred when Kuri at Alfamodess learned information about East Coast's truckers from Narewski at Cardinal and Alfamodess then began soliciting those truckers to carry Cardinal freight.

The Third Circuit has endorsed an alternative test for personal jurisdiction when the claim at issue is based on an intentional tort. <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007).

Interpreting the decision of the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), the Third Circuit has held that personal jurisdiction will be found where: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. Imo Indus., 155 F.3d at 265-66; Marten, 499 F.3d at 297. This test is designed to evaluate the effects of the defendant's activity and to focus on the relationship between the defendant, the forum, and the litigation; a less exacting standard might permit the plaintiff in an intentional tort case to always sue in her home state, which would be contrary to the due process requirements of the jurisdictional analysis. Imo Indus., 155 F.3d at 265.

Here, while East Coast has alleged that all Defendants committed intentional torts whose harm was suffered by East Coast in New Jersey, East Coast has not shown that the Defendants expressly aimed their conduct at New Jersey such that New Jersey was the focal point of the tortious activity. This prong of the test requires plaintiff to show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 266. The conduct East Coast alleges caused it harm can be boiled down to improper information sharing between Nareski and Kuri, improper communication between Alfamodess and Cardinal, and improper solicitation of individuals with whom East Coast did business, including BMX, based on New Jersey.

Though the solicitation of BMX occurred via communication from Alfamodess to New

9

Jersey, all the other complained-of conduct occurred in Pennsylvania.  Narewski and Kuri both lived in Pennsylvania, and their respective offices, where they allegedly shared information, were in Pennsylvania.  The mailing of the summaries of payment activity to East Coast in New Jersey cannot count towards Defendants' contacts for this analysis; though these activities were purposefully directed towards New Jersey, East Coast's claims of misappropriate of trade secrets does not arise out of these contacts.  The information East Coast alleges was protected was not on the documentation provided to Alfamodess, and the payments made to East Coast based on that documentation could not have played a role in any of the alleged tortious conduct.  (Compl. ¶¶ 14-15.)  East Coast's claim of misappropriate of trade secrets arises out of the improper conduct of Kuri and Narewski, which occurred when they "watched East Coast's operations for Cardinal" and improperly shared information.  (Latta Decl. ¶ 22.)  This conduct occurred in Pennsylvania and can only be connected to New Jersey through East Coast's residence in the state.  Imo Indus., 155 F.3d at 265 (noting that plaintiff's residence is relevant to analysis because it may enhance defendant's contacts with the forum but "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself").

Because East Coast cannot show that Kuri, Narewski, or Alfamodess expressly aimed their tortious conduct at New Jersey, this Court does not have specific personal jurisdiction over the Defendants on Count 1 of the Complaint.

The second count alleges violations of the New Jersey RICO statute.  The RICO claim is inextricably linked to the misappropriation claim, because the alleged misappropriation of trade secrets is one of the predicate acts alleged to violate the RICO statute.  As the Court has already

concluded that it does not have personal jurisdiction over the predicate act, separate analysis on Count 2 is not necessary.

### III.   TRANSFER

Instead, the Court concludes that the proper outcome is to transfer this case to the Eastern District of Pennsylvania.  When a district court determines it lacks personal jurisdiction, it can transfer the case to a district in which the case could have been brought originally.  Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 544 (3d Cir. 1985).  The transfer provision at 28 U.S.C. § 1406(a) applies when the court lacks personal jurisdiction.  See Lafferty v. Riel, 495 F.3d 72, 77 (3d Cir. 2007) ("Section 1406(a) comes into play where plaintiffs file suit in an improper forum"(citations omitted)).  Section 1406(a) directs courts to "dismiss, or if it be in the interest of justice, transfer" cases where venue is improper.  Courts typically use § 1406(a) as an equitable remedy so that a plaintiff can avoid having his case dismissed altogether due to jurisdictional problems.  Carteret Sav. Bank, FA v. Shushan, 919 F.2d 225, 231-232 (3d Cir. 1990).

In Carteret Savings Bank, the Third Circuit reviewed a district court's order to transfer in a case over which the district court had decided it lacked personal jurisdiction.  Id. at 227.  There, the plaintiff asked the district court to either amend its order to vacate the transfer of venue or to certify the question of personal jurisdiction for immediate appeal.  Id.  The district court denied both requests, and the plaintiff filed a petition for mandamus with the Third Circuit asking it to vacate and set aside the district court's order.  Id. at 228.  The Third Circuit issued an order directing the district court to vacate the portion of its order transferring venue, stating that – in what it acknowledged was an "unusual context" – it would not compel the plaintiff to accept

transfer pursuant to § 1406(a) over dismissal.  Id. at 231-32.

Here, while East Coast has filed opposition briefs to Defendants' motion asserting improper venue, it has not asserted that it would prefer dismissal to transfer.  East Coast has not indicated what it wants this Court to do upon concluding that the Defendants are not subject to personal jurisdiction.  East Coast did say it was "willing to travel to defendants' locations" and so presumably would not be put to great inconvenience by litigating this matter in Pennsylvania.  (Pl.'s Opp'n at 20.)  Accordingly, Plaintiffs' position does not appear to be the same "unusual context" addressed in Carteret, and this Court will transfer the case to the Eastern District of Pennsylvania, because it could have originally been brought there.

All parties agree that the Defendants live and work in either Philadelphia, Hatboro, or Huntingdon Valley, Pennsylvania.  As noted above, the conduct giving rise to East Coast's claims occurred at the Alfamodess and Cardinal offices in these locations.  Personal jurisdiction over the Defendants lies in the Eastern District of Pennsylvania, and source of federal subject matter jurisdiction over the dispute (diversity of citizenship) will not be jeopardized.  Venue is proper there because a "substantial part" of the events giving rise to the claim occurred in that District.  The Court additionally notes that the James A. Byrne United States Courthouse, where the United States District Court for the Eastern District of Pennsylvania is located, is less than a ten minute drive from this court.  Transfer should not present an inconvenience to any party.

IV.    **CONCLUSION**

As explained above, Defendants Kuri, Narewski, and Alfamodess are not subject to personal jurisdiction in the District of New Jersey for East Coast's claims of misappropriation of trade secrets.  Because it cannot exercise personal jurisdiction over the Defendants, the Court

does not reach Defendants' arguments regarding East Coast's failure to state a claim on which relief can be granted or failure to comply with N.J.S.A. § 42:2B-57.  The Court transfers this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406(a).  An accompanying order will issue today.


Dated:  6-9-08                                                   /s/ Robert B. Kugler
                                                                      ROBERT B. KUGLER
                                                                      United States District Judge